Good morning and may it please the Court. I'm Anthony Shelley here on behalf of the appellant Blue Cross Blue Shield entities. I'd like to reserve three minutes of my time for rebuttal. This case raises two issues. First is a FEBA, F-E-H-B-A reimbursement dispute subject to removal under the Federal Office of Removal Statute. And second, assuming so, was remand nonetheless required because of the probate exception to federal jurisdiction? The district court answered the first question correctly, finding that there was federal officer removal jurisdiction, but it nonetheless remanded the case incorrectly under the probate exception. I'd like to spend a few moments on the officer removal jurisdiction question and then turn to the probate exception. On federal officer removal, all of the recent cases uniformly hold that FEBA carriers properly may remove cases under that statute. And for that, we cite the Jacks case from the Eighth Circuit from 2011, the Bell District Court decision from Arkansas very recent, which was firmed on appeal by the Eighth Circuit, the Tantu-Weyu decision from a California district court, the Inspire-Malibu case from a district court here in California, the Helfrich case from the Tenth Circuit from last year, which wasn't an officer removal case, but particularly noted the agency relationship between the government contractor here and the federal government. I'm having a hard time accepting that the Blue Cross Blue Shield is acting pursuant to federal officers' direction. I realize the district court found that was the case, but I don't see how – I don't see what makes the Blues different from any other government contractor who has a contract and they're performing pursuant to the contract terms, but they also are acting just as a private insurance company would. Well, this is – as the – particularly the Eighth Circuit grappled with this exact point and noted that this isn't an off-the-shelf insurance product. This is a federal program that was established in 1959, a comprehensive program where the government was given the obligation to set up a program to administer health benefits for federal employees. They decided to do so through contracts with private insurers. And the Eighth Circuit in Jax, for instance, noted the very close relationship and how the Blues were assisting – were assisting the federal government to provide the insurance. And if the Blues weren't going to do it, the federal government would have to do it. Well, no. There's other insurance companies. When does the Blues' contract run out? It's a yearly contract that's – they renewed 60 years. Right, but it could end any time. It could. It could. But government – but in Watson, for instance, the Supreme Court noted government contractors may remove under the Federal Officer Removal Statute. Some. Like, I think we have a case where – I think Judge Kaczynski wrote it – that some Lockheed – Kibalski. The Kibalski case. Yeah. Some of their duties might make them acting pursuant to a federal officer, but others of their duties would not. Right. So why is – what duties are here that make – that turn the Blues into federal – acting under federal officer authority? Sure. Well, you can look, first of all, at the overall program, that it's a government program. And that's really all that's necessary. It's a comprehensive government program where the federal – where the contractor's assisting the federal government. That was the Jacks holding. But more specifically, to your point, Your Honor, reimbursement is a particular action under the government contract that the federal government has ordered. It has issued a regulation, for instance, just in the last few years, Section 5 CFR, Section 890.106, that specifically says these are an important aspect of these contracts. The carriers are obligated to seek segregation under these reimbursement provisions, and the money goes back to the federal government. We don't keep a cent of the reimbursement money that we get. And so, as a result, that's a – that's an important distinction. Where does the money come from in the first place? The federal treasury. It comes from the federal treasury to pay the benefits on a pay-as-you-go basis, and as soon as we collect the money in reimbursement, we have to send it all back to the federal treasury. And therefore, that's why the – So how does Blue Cross make money in this deal? It doesn't make any money in the deal on reimbursement. Its only profit under the service benefit plan is through a fixed service fee that the government at the end of the contract year will decide it wants to give or not to the carrier. So they're – So you're – so the Blues just do this for free? No, the Blues do it on a – the Blues do it for the service charge. But also, I mean, they do it for the service charge. It's a contract that was begun 60 years ago, but they don't make any money off of each benefit payment or any money off of reimbursement. So they're making money – the government's paying the money to provide the service pursuant to the government plan. Is that accurate? They're making a service charge at the – at each year. What's – tell me what's the service charge, like how much money a year? Well, I – it's maybe about 100 – I believe it's about 100 million, but this contract is a $20 billion contract. Okay, so they're making about 100 million a year on this. I don't want to be exact. You don't want to be specific. It's a fraction of the – it's a fraction of the total money that is – that is transferred in this – in these government – under the government contract. It's in the billions and billions of dollars, the number of claims. Does Blue Cross Blue Shield administer – decide eligibility questions and decide – decide payment questions? Is that what they're doing? In the first instance, it does. Okay. But there's a reconsideration. Are there any – are there any collateral consequences here of deciding that you can that the blues can be removed as federal officers under 1442? Does it have any implications, for example, under the state – state action doctrine? If Blue Cross Blue Shield denied a claim and a claimant felt that they had not been afforded appropriate due process, can they sue the blues under 1983? I know of no case that says they can or they cannot. Actually, I'm sorry, probably Bivens' claim rather than a 1983 claim. It's – I'm not aware that any such action has been brought, but I think it might run into a jurisdictional problem under 5 U.S.C. section 8912, which specifically says that suits related to this program are to be brought against the United States in federal court. Okay. So the United States has assumed responsibility for any suits against the blues. Any suits under the program, I would say. Right. So if a lawsuit was brought against the blues, we basically remove – if it was in state court, we remove it to federal court. And almost uniformly, the federal courts have said the lawsuit can't be brought because the only proper party under this program is the United States. And I can't think of a case we lost, in fact, under that – where there was a lawsuit brought against a blue plan and that any court has held and you can be sued. What about if a federal employee wants to sue you for wrongful denial of coverage? Cannot do it. In fact, they can bring an administrative – they can bring an – if they don't like the denial of coverage, they can bring an administrative proceeding at OPM, the Office of Personnel Management, to challenge our decision. OPM will render it – that's a federal agency. OPM will – OPM, of course. OPM will issue its decision and then the – OPM's regulations and 5 U.S.C. section 8912 say the sole lawsuit that can be brought after that is against OPM to challenge its decision regarding the benefit denial. So we're only – we're only a first stop in a denial of benefit. And what if there was a claim for bad faith denial of benefits? There's a Ninth Circuit case on – I don't know if I still want to be insured by the blues. Of course you do. It's a wonderful program. I'm sure they are. I'm sure they are. Seventy percent of all – I've been choosing them since I was – for 20 years. It's a wonderful program. For full disclosure. But I just don't see how – I never thought of them as anything other than a private insurer. Well, if you were a blue, you would think differently because the blues are so regulated under the government contract and have such a close relationship with OPM, including all of their decisions being subject to individual administrative proceedings by the government. Well, it does make a difference to me that a suit against you for wrongful coverage or bad faith denial of coverage would be defended by the U.S. government. It does make sense? Or does it – No, that makes a difference to me. As opposed to subrogation. Well, the – on the bad faith coverage, I just want to point out the Ninth Circuit and the Hayes case from 1987 actually held that bad faith is also – any allegations of bad faith are also not actionable against the blues and instead have to be channeled into the denial of benefit scenario at OPM. With respect to reimbursement, though, it's particularly something that only benefits the federal government because it dollar for dollar goes back to the federal government and the federal government uses that money to reduce the cost of benefits for its employees because the government pays 75 to 80 percent of all coverage for federal employees. And so they're looking for cost containment measures and have insisted on this particular reimbursement concept. I also wanted to point out that your Honor was asking about how is reimbursement tied to the government contract. And there was a carrier letter that we cite in the record in 2012 where the government specifically told the carriers, you must be seeking reimbursement on our behalf in connection with the contract. I'll just point out where it is in the record. That's at Excerpt of Record 106. You must be seeking reimbursement. You must be doing it pursuant to the contract and you must not follow state anti-subrogation doctrines because they're preempted by FEBA. And as a result, the carriers diligently do this, do it on behalf of the federal government. That's why we assert that they act under federal officers and I ask the court to agree with the Eighth Circuit on this issue and really the Tenth Circuit in the Helfrich case as well, holding essentially that. For a minute, I'd like to focus on the probate exception and the main point I'd like to make with respect to that. There's a lot of argument on the probate exception in the two briefs, but the court really doesn't have to do any heavy lifting on that because the Markham case from the Supreme Court from the 1940s is exactly the same situation. Money was being held or property was being held in the state court. A federal officer went to federal court and said, I have an interest in that property in the state court and I want the federal court to adjudicate my rights there. And the lower courts have said, sorry, it's an estate proceeding in state court, so you can't bring your case to federal court. And in Markham, the Supreme Court said specifically that rights to property being held in the state court can be adjudicated in the federal court without any problem under the probate exception. And so as a result, really the court didn't need to do much more under the probate exception other than specifically apply Markham, which the district court didn't do. So I'd like to reserve the remainder of my time for the rebuttal. I have one other question for you. California does not allow recovery of amounts of money that the I want to say the injured party received from the insurer. So presumably that's not in the amount of money that the state is holding. So doesn't that have a bearing on whether or not you can bring this proceeding at all? No, because in fact I think that the defendant it could or could not be included under state law in any award, depending on what the defendant wants to do in the case. But let's assume it's not But that state rule would be preempted by federal law because the contract itself has a provision in it that says specifically we get the first dollar. It doesn't matter how it's designated, allocated or described. We assume the first part of the money you get contains our benefits amount, whether you try to manipulate the procedure. But isn't that problematic for the person, the minor who was injured because then they wouldn't get paid by the party that injured them and they wouldn't get their benefits from their insurer? Well no, it's their obligation. It's the obligation of the other side to understand that that California rule is preempted by federal law and say I'm entitled to get a full recovery including the benefits that the carrier paid because they're going to come back and try to get them from me. Because federal law controls here. The government wants its money back. The government's trying to keep the cost of the program down. They couldn't bring that suit in The underlying suit would be brought in state court and state court law substantive law would apply. And then the insurance company by swooping them into federal court would say okay now it's preempted so the injured person's really out of luck under all the rules you're citing here. Respectfully, I disagree, Your Honor. I think the state court would have to apply the federal rule. The state court would say this is a malpractice action, a tort suit. But they don't. They don't apply the federal rule. The appeal eventually could go to the U.S. Supreme Court if necessary to straighten it all out. But only an ancillary piece of this proceeding was eventually brought over to the federal court anyway. Just this lean-quashing proceeding. The whole suit stays there. But again I repeat that the state law rule that health benefits don't necessarily need to be included in a jury award or settlement it's preempted by federal law and the award should have included more. The settlement should have included more because the government requires that reimbursement be made. Thank you, Your Honor. May it please the Court. Victoria Fuller for the I'd like to start off with honing in on the issues that I've isolated that make the strongest case for the inapplicability of the federal officer removal statute on the basis that Blue Cross was not acting under the direction of a federal officer. I think there are three key points that I'd like to make that maybe didn't jump out as much in the briefing. And one is that there isn't a sufficient level of control exercised by the government. One thing I did in preparing for today is I read more carefully a House report that was cited by Blue Cross in its briefing and that's House Report 105-374 in which Congress is describing FEBA as this very successful program able to provide excellent benefits to employees. And in that context Congress stated the program's market orientation has effectively contained costs through private sector competition with limited government intervention. So the whole success of this program is the notion that there is market competition. That these are private for-profit companies competing for this lucrative government contract. And it's the hands-off Are they referring to the fact that there are multiple plans available to federal employees? And therefore there's competition between those plans but all within the bubble of federal oversight? Well, I believe that they are referring to the fact that they are taking more of a hands-off approach and allowing market forces to work and that that's really the opposite of a I don't think you answered my question. So when I go to at the end of the year during the open season, I have my choice of a Blue Cross plan, I have my choice of something else, a variety of different plans and they offer me, you know, different kinds of coverage and different kinds of withholdings. Now there's competition, but that's still competition all within the OPM bubble. Is that what Congress was referring to there? I would say within the regulatory scheme and within competition in terms of the negotiability of the contract terms. So one way in which the level of control is not sufficient here is that the insurance companies have choice and they have negotiating power and these contract terms are negotiable. You're talking about negotiating with OPM as opposed to with the insured? Exactly, Your Honor. I'm talking about the contracts themselves. Blue Cross's contract with OPM. But that would always be true with any government contract, right? If you're Lockheed or Boeing, you don't have to take the contract with the government, you don't want to produce the jet. But the fundamental difference between this case is, for example, the term at issue here, the subrogation term, that term itself is even negotiable. There is a case, Nevels v. Humana that discusses a subrogation term in contracts with Humana. And it's the district court case. That's 2011 U.S. District Lexus 128801. And the subrogation term in that contract is quite different than the term in Blue Cross. So the difference between government contractors performing, whether or not contractors are free to accept the work of the government at all is that in the cases where the federal officer removal statute has applied, is that the government has exercised extreme control and detailed specifications. And I would contrast this case with this court's decision in Lady, where the contract in Lady, I believe let me just pull it up, okay, versus Crane where the naval officers provided affidavits attesting that they provided specific detailed specifications about what the products were that they needed, down to the warning language that was at issue there. And here what we have is negotiations between private insurance companies and the government to perform these services. I think another fundamental distinction here is that whatever function the private entity is performing, if it's going to be determined as acting at the direction of a federal officer, is that it has to be a government function. And in all of these other cases, the companies were doing the work of the government. For example, making Agent Orange so that the government could use it. Mr. Shelley cited us to 5 U.S.C. 8912, which says that a suit against Blue Cross becomes a suit against the United States can be removed to federal court. How do you deal with that? I believe that that supports my position, because the Congress has enacted specifically, has dealt with federal jurisdiction. And the only instance in which there is original jurisdiction in the federal courts is when there's a lawsuit against the United States. And there's a lawsuit against the United States when Blue Cross has made a claims determination, and the Office of Personal Management has decided that that was appropriate, and then the lawsuit goes against the Office of Personnel Management. And the amicus brief in the Pollitt case that was discussed in the amicus brief cited to benefit our position, or to support our position, was that the carriers make their own decisions as to benefits. They act independently. But that the OPM's oversight isn't enough to make the contractor essentially an agent for the private government. And Congress could have, in fact, made a much broader jurisdictional statute, like the one in civil action relating to the federal officer, or the FEBA, is going to go to the district courts. Or Congress could have said that carriers are acting under the direction of a federal officer for the purposes of the federal officer removal statute. But Congress did not. And so I submit that the inference there is that Congress intended that disputes between carriers and insurers are meant to be resolved in state courts. So another point I would like to discuss is that well, I think I'll move on to the probate exception. I'd just like to make a couple of comments on the probate exception. And I think the fundamental difference between this case and the two U.S. Supreme Court cases is that the United States Supreme Court decided in the context of administration of an estate that it was proper for a federal court to make a decision as to the rights of the parties. And then that would improperly dispose of property within the custody of the state probate court. Because the probate court would just simply take that back and administer the estate. But the fundamental distinction here is that the state court under the probate codes has jurisdiction and has a duty to supervise the settlement on behalf of the minor. So the state court is required to make a determination that the entire settlement is in the best interest of the child. And so if the federal court exercises jurisdiction, then in this instance, given the supervisory authority and duty of the state court, the exercise of jurisdiction here would be an improper disposal or effect on property within the custody of the state court. And with that, unless the court has any further questions, I'll submit and I'd ask that the court affirm the district court's order. Okay. Thank you. I'll give you a minute for rebuttal because I know you didn't get a chance to discuss probate. Thank you, Your Honor. I just want to emphasize the government control portion on the federal officer removal statute. The requisite government control is here as the Eighth Circuit held in the Jacks case in a FEBA case involving the same plan as the Tenth Circuit held in the Helfrich case in a FEBA case exactly like this. And a government contractor may remove the case. It just then depends on the type of government contract. Here you have a unique federal program that is run by the federal government which the Blues assist it in running. The government exercises guidance, supervision, and control in the terms of the Watson case. And that makes this different from, say, a paperclip manufacturer who has a contract with the federal government. This is a comprehensive federal program and the government would have to take up the function if its insurers, its contractors didn't do it in the first place. So this is a government function that's involved. The well-being, the fringe benefits of its federal employees is a government function, not a private function. So we would ask that you support this bill as it's being issued by Judge Curiel.
judges: Wardlaw, Bybee, Bell